## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF ILLINOIS

BRETT KLAUS,                              )
                                          )
                    Plaintiff,            )          3:26-cv-12
                                          )
            v.                            )          **COMPLAINT**
                                          )
MARQUETTE CATHOLIC HIGH SCHOOL,           )
                                          )
                    Defendant.            )          JURY TRIAL DEMANDED
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - )

## COMPLAINT

Plaintiff Brett Klaus, by and through his attorneys, Thompson Coburn LLP and Mark D. Schoon, alleges and states as follows:

### PRELIMINARY STATEMENT

1.      Plaintiff, Brett Klaus ("**Klaus**"), brings this action against Marquette Catholic High School ("**Defendant**") for violations of Title VII of the Civil Rights Act of 1964 (Title VII) (42 U.S.C. § 2000e), the Americans with Disabilities (Act 42 U.S.C. § 12101 *et seq*.) and the Illinois Human Rights Act (775 ILCS 5/1-101 *et seq*.).

2.      Defendant hired Klaus in or about May 2019 as Fine Arts and Humanities (English) Instructor and Theater Director. During Klaus's tenure at Marquette Catholic High School, he successfully performed his job duties and achieved notable programmatic accomplishments, including directing major school musical and theater productions, leading music programs and

performances, and contributing to school-wide events and programming that received positive feedback from students, families and the school community. Despite Klaus's many achievements, Defendant discriminated against him because of his sexual orientation and retaliated against him. On April 17, 2024, after approximately five academic years of excellent service to Marquette Catholic High School, Defendant summarily refused to renew Klaus's employment contract.

## JURISDICTION

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this is a civil action arising under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq*.) and the Americans with Disabilities Act (42 U.S.C. § 12101 *et seq*.). This Court has supplemental jurisdiction over Klaus's related claims arising under state and local laws pursuant to 28 U.S.C. § 1367(a).

## VENUE

4.      Venue is proper in this district under 42 U.S.C. § 2000e-5(f)(3), because the unlawful employment practice was committed in this District.

## CONDITIONS PRECEDENT

5.      On October 9, 2024, Klaus timely filed a charge of discrimination with the Illinois Department of Human Rights ("**IDHR**"), which was cross-filed by IDHR with the U.S. Equal Employment Opportunity Commission (the "**EEOC**").

6.      On or about October 27, 2025, Klaus received a right to sue letter from IDHR (the "**IDHR Notice**").

7.      On December 31, 2025, Klaus requested that the EEOC issue a Notice of Right to Sue (the "**EEOC Request Letter**") pursuant to 29 C.F.R. § 1601.28(a)(1) (the "**EEOC Notice**"). As of the date of filing of this Complaint, Klaus has not yet received the EEOC Notice. Klaus will file the EEOC Notice with the Court promptly upon receipt. Klaus is filing this action on or before January 7, 2026 to preserve related Illinois claims that arise from the same nucleus of operative facts and that would otherwise be time-barred under applicable Illinois law.

8.      Contemporaneously or within 21 days after the filing of this Complaint, Klaus will serve a copy of the Complaint on the Chief Legal Counsel of the Illinois Department of Human Rights, in accordance with 775 ILCS 5/7A-102.

## PARTIES

9.      Klaus resides in St. Charles, Missouri. Klaus is a citizen of Missouri.

10.     Klaus is an employee, as defined by Title VII, and the Illinois Human Rights Act. Klaus worked for Marquette Catholic High School as a Fine Arts and Humanities (English) Instructor and Theater Director in Alton, Illinois, from approximately May 20, 2019 through approximately April 17, 2024. Klaus directed and/or supported major school productions and school-wide events, received positive feedback for his work, and performed his duties competently; nevertheless, he was subjected to hostility, exclusion, and ultimately nonrenewal of his employment contract under circumstances he contends were motivated by discrimination based on sexual orientation.

11.     Upon information and belief, Defendant is an Illinois not-for-profit corporation that operates a private Catholic preparatory school located at 219 East Fourth Street, Alton, Illinois

62002. Defendant maintains offices and does business in Alton, Illinois. Defendant is an employer as defined by Title VII and the Illinois Human Rights Act. Upon information and belief, Defendant operates a secondary school and employed 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year. Defendant is an employer as defined by Title VII and the Illinois Human Rights Act. At all relevant times, Defendant acted through its administrators, supervisors, and agents, including its Principal and Dean of Students, Timothy J. Harmon ("**Harmon**"), who exercised supervisory authority over Klaus's employment.

### FACTS

12.     Klaus began working for Defendant in approximately May 2019 as a teacher in the Fine Arts Department (music and theatre) in Alton, Illinois.

13.     During his tenure, Klaus performed his job successfully and achieved notable programmatic accomplishments, including directing major school musical/theater productions, leading music programs and performances, and contributing to school-wide events and programming that received positive feedback from students, families, and the school community.

14.     Defendant has exhibited a pattern of discrimination and hostility toward LGBTQ employees and students. For example: (a) during Klaus's hiring process, school leadership questioned Klaus about his sexual orientation and Klaus was warned that board and faculty members opposed his employment because he is gay; (b) Klaus was issued a contract containing language that he understood to restrict a "gay lifestyle," including a clause prohibiting "living a lifestyle inconsistent with Roman Catholic Doctrine"; (c) a faculty colleague publicly outed Klaus using "gay" as a derogatory slur at a faculty event and Defendant took no corrective action; (d) staff members made anti-gay and anti-trans remarks, including a violent threat directed at a

transgender individual, which were reported to administration and not meaningfully addressed; and (e) homophobic harassment affecting students and Klaus's programs was reported and met with inaction.

15.     Upon information and belief, prior to Klaus's hiring, Defendant and/or diocesan authorities responsible for Defendant's governance directed adverse action against LGBTQ employees. By way of example, and upon information and belief, Defendant or diocesan authorities caused the termination of Coach Tammy Talbert, a respected lesbian faculty member. This event reinforced within Defendant's workplace the message that LGBTQ identity was treated as an employment liability.

16.     In or about Spring 2018—before Defendant formally hired Klaus—Klaus stepped in to direct Defendant's spring musical after the prior director's mismanagement jeopardized the production. Klaus successfully stabilized and led the production, which received strong feedback from students and the school community.

17.     In or about Summer 2019, Klaus voluntarily ran a Summer Musical Theater Camp for Defendant's students without compensation, further supporting Defendant's programs and community engagement.

18.     In or about August 2019, a colleague of Klaus publicly outed Klaus at a faculty gathering and used "gay" as a derogatory slur. Defendant took no meaningful corrective action, and, upon information and belief, assigned that colleague as Klaus's mentor.

19.     In or about Fall 2019, Klaus experienced harassment and intimidation that Klaus understood to be connected to his sexual orientation, including (a) two incidents of vandalism to

Klaus's vehicle and (b) anti-gay "pranks" and harassment in Klaus's classroom. Klaus reported these incidents to Defendant's administration, but Defendant provided minimal support and did not meaningfully investigate or follow up.

20.     During this same period, Defendant's head custodian repeatedly made anti-gay and anti-trans remarks, including a violent threat directed at a transgender musician. Klaus reported these incidents to Defendant's administration, and Defendant did not take meaningful corrective action.

21.     In or about Spring 2020, Defendant's then-principal announced an early retirement, contributing to leadership instability. During this period, Klaus was discouraged by colleagues from bringing his partner to a staff-involved social event (including a trivia night). Klaus disinvited his partner out of fear of how Klaus's relationship would be perceived in Defendant's workplace.

22.     Upon information and belief, Defendant experienced continued leadership turmoil and turnover, including the abrupt removal of a newly appointed principal (including Dr. Fleming) within months of appointment and the installation of Harmon as the current principal of Defendant. This instability contributed to inconsistent enforcement of policies and a failure to respond meaningfully to complaints, including Klaus's reports of anti-LGBTQ harassment and discriminatory treatment.

23.     During this same period, Klaus was subjected to workplace hostility from staff, including an incident in which staff member Molly Velikis verbally abused Klaus. Defendant did not take corrective action. Klaus thereafter received a reprimand under the new administration for minor issues, while more serious misconduct by other employees was not meaningfully addressed.

24.     In or about March 2022, Klaus learned that Defendant's employee health plan excluded coverage for PrEP (a medication commonly used for HIV prevention). Klaus understood this exclusion to disproportionately burden LGBTQ employees and to reflect hostility toward LGBTQ health needs.

25.     In mid-to-late 2022, Defendant obstructed Klaus's ability to promote and support Defendant's music and theater programs, including restricting communications and support necessary to sustain the programs. In addition, Defendant's employee handbook stated that annual contracts were to be issued by June for the upcoming school year; however, Klaus's contract for the 2021–2022 school year was not provided until February 2022—approximately six months after the school year began—without explanation, causing Klaus stress and uncertainty regarding the continuity of his employment.

26.     In 2023, Defendant escalated scrutiny and hostility in ways that Klaus understood to be connected to LGBTQ issues and Klaus's sexual orientation. Among other things, (a) students began asking Klaus questions about his sexual orientation; (b) a senior administrator referred to Klaus as "f***ing evil"; and (c) an Academic Advisor issued Klaus a warning based on incorrect credit expectations in a manner that deviated from prior disciplinary protocols. Klaus raised concerns about program support, responsibility, and fairness; Defendant's responses were dismissive or absent.

27.     Defendant employed Klaus under an annual contract-renewal arrangement. Klaus possesses a written employment contract dated April 25, 2022 and a subsequent written employment contract dated May 17, 2023. The May 17, 2023 contract contains "reasonable cause" language that is not included in the April 25, 2022 contract, including the following: "Reasonable

cause is defined as a violation of the policies and procedures of [Defendant] by the employee; or not following such policies and/or engaging in conduct prohibited by the Roman Catholic Church, and/or living a lifestyle inconsistent with Roman Catholic doctrine, whether occurring during or outside of the workday, or whether occurring on or off school premises." Klaus contends that this "lifestyle" language is consistent with the type of clause he previously was provided and understood to restrict a "gay lifestyle," and, upon information and belief, Defendant did not impose comparable "lifestyle" restrictions in employment contracts of similarly situated employees outside Klaus's protected class.

28.     On or about July 2023, Defendant began to marginalize Klaus by restricting communication and support for his department, excluding him from important communications and decision-making, and removing or reassigning key responsibilities and courses without explanation, effectively undermining his professional role and authority.

29.     On or about this same period, administrators engaged in disparate treatment of Klaus by, among other things: (a) removing courses from Klaus's schedule (including Music Theory, Group Piano, American Music History, and Dual Credit Music Appreciation) without meaningful explanation; (b) selecting Fine Arts dates and imposing scheduling decisions for the first time without consulting Klaus, including conflicts that undermined rehearsals and productions; (c) privately soliciting Klaus's assistant director about replacing Klaus while he remained employed; and (d) omitting Klaus's name from school-wide communications praising programs he directed.

30.     Throughout Klaus's employment, Defendant's employees and agents also made inappropriate and hostile comments—and engaged in inappropriate and humiliating conduct—

connected to Klaus's sexual orientation. For example: (a) in or about August 2019, a colleague publicly referenced Klaus as "gay" in a derogatory manner at a faculty gathering and Defendant imposed no discipline; (b) the head custodian repeatedly made anti-gay and anti-trans remarks, including a violent threat toward a transgender musician, which Klaus reported and Defendant failed to address; (c) Defendant tolerated homophobic harassment affecting Klaus and his students, including incidents in which students used homophobic slurs directed at members of Klaus's programs; and (d) in or about December 2022, at a staff Christmas gathering at a local bar, a faculty member became intoxicated, exposed her breasts to Klaus, and made a remark suggesting she could "turn" him straight—conduct that underscored that Klaus was treated differently because he is gay.

31.     In addition, Defendant's administrators marginalized Klaus while treating similarly situated employees more favorably who did not share Klaus's protected status as a gay man. For example, other employees were not subjected to comparable exclusion, stripping of program authority, or covert replacement efforts despite comparable or more serious workplace issues; and Defendant did not impose meaningful corrective action when non-LGBTQ staff engaged in misconduct or abusive conduct toward Klaus and his students.

32.     As a result, on multiple occasions—including but not limited to 2019 through 2024—Klaus complained to Defendant's leadership, including to Harmon, about discriminatory and hostile treatment. Specifically, Klaus reported: the public outing incident; anti-LGBTQ comments and threats by staff; homophobic harassment affecting his students; and the ongoing exclusion and undermining of his programs and responsibilities. Defendant's leadership responded with inaction, dismissal, or minimization—including, after Klaus reported serious staff misconduct, a response to the effect of "what is it you want me to do?"

33.    In or about Fall 2023, Klaus informed Harmon that Klaus had been diagnosed with Bipolar II disorder. On or about January 17, 2024, Klaus informed Harmon that Klaus has Bipolar II disorder and that he was adjusting to new medication that was disrupting his sleep and contributing to tardiness. Defendant did not engage in the interactive process or provide reasonable accommodation.

34.    Beginning in or about 2023 and continuing through 2024, Defendant subjected Klaus to unlawful retaliation. In particular, Defendant: (a) issued Klaus a formal reprimand after he raised concerns about a student with a bullying record being selected for a leadership role; (b) escalated the stripping of Klaus's authority and program support after he raised fairness concerns; (c) misled Klaus about his job status while termination was already in progress; and (d) after Klaus communicated concerns to families and stated, in substance, "I hope this is not because of who I am," Defendant's administrative staff immediately deactivated Klaus's school email account and barred him from campus, including preventing him from saying goodbye to students.

35.    In or about early April 2024, prior to informing Klaus of its termination decision, Defendant's students noticed Klaus's name missing from the following year's rosters. Klaus met with Harmon in person and was told, in substance, that "everything is fine." Days later, Defendant announced a major server disruption that Defendant claimed erased documents. Harmon reassured Klaus that "everything is fine," even though students had already noticed Klaus's removal from future rosters.

36.    Only months after Klaus's protected activity and continued complaints, on or about April 17, 2024, Defendant informed Klaus that his contract would not be renewed, effectively terminating his employment. Defendant claimed it was based on "tardiness." However,

Defendant's stated reason is weak and pretextual because, among other things: (a) Klaus received no written warnings, no performance improvement plan, and no progressive discipline; (b) Defendant refused to provide documentation supporting the decision despite claiming documentation existed; (c) Defendant had already signaled Klaus's removal to students before informing Klaus; (d) Defendant continued to permit Klaus to teach and perform duties even after the non-renewal decision; and (e) on information and belief, similarly situated non-LGBTQ employees were not terminated or non-renewed for comparable issues.

37.     After Defendant communicated its nonrenewal decision, Klaus submitted to Defendant a list of students involved in homophobic harassment. The underlying harassment had occurred shortly before the 2024 Spring Musical (in or about April 2024). Defendant stated the issue was "being handled," but provided Klaus no meaningful update or corrective action information.

38.     Klaus used accrued sick leave following Defendant's nonrenewal decision. When Klaus later notified Harmon that Klaus was prepared to return, Harmon stated that Harmon had contacted Defendant's diocesan authorities and that Klaus was barred from campus.

39.     Klaus thereafter emailed Harmon explaining that Klaus's new medication caused suicidal thoughts and that Klaus was struggling. Harmon did not respond.

40.     In or about Summer 2024, Klaus identified an underpayment error related to uncredited experience and raised the issue to Harmon; Harmon did not respond. Upon information and belief, after Klaus's removal, programs Klaus built deteriorated or disappeared, including sharply reduced participation in the summer camp Klaus had previously operated.

41.     Upon information and belief, Defendant's adverse actions—including marginalization, exclusion, loss of responsibilities, campus ban, and non-renewal—were not imposed on similarly situated employees who were not gay, and Defendant treated Klaus less favorably because of his sexual orientation and because he engaged in protected activity.

42.     Attached hereto as **Exhibit A** is a true and correct copy of Klaus's Charge of Discrimination filed with IDHR, filed as of October 9, 2024, and cross-filed by IDHR with the EEOC.

43.     Attached hereto as **Exhibit B** is a true and correct copy of the IDHR Notice.

44.     Attached hereto as **Exhibit C** is a true and correct copy of the EEOC Request Letter.

## COUNT ONE

### Sex Discrimination (Sexual Orientation) in Violation of Title VII of the Civil Rights Act of 1964

### (42 U.S.C. §§ 2000e *et seq.*)

45.     Klaus repeats and realleges paragraphs 1 through 43 as if fully set forth herein.

46.     Klaus is a gay man (a protected class under Title VII's prohibition on sex discrimination) and was qualified for his position when Defendant effectively terminated Klaus's employment.

47.     Defendant's employees and agents made and tolerated discriminatory comments and conduct regarding Klaus's sexual orientation. For example: publicly outing Klaus using "gay" as a derogatory slur; repeated anti-gay and anti-trans remarks by staff including a violent threat;

tolerance of homophobic slurs affecting Klaus's students and programs; and administrative hostility and exclusion directed at Klaus in the context of his known LGBTQ status.

48.      In addition, Defendant marginalized Klaus while treating similarly situated employees more favorably. Specifically, Defendant stripped Klaus of responsibilities and coursework, excluded Klaus from departmental communications and decision-making, omitted Klaus's name from communications praising programs he directed, pursued replacement discussions while Klaus was employed, and ultimately terminated Klaus, while failing to impose comparable adverse actions for similarly situated non-LGBTQ employees.

49.      Klaus suffered damages because of Defendant's unlawful discriminatory actions, including emotional distress, reputational harm, past and future lost wages and benefits, and the costs of bringing this action. Klaus also seeks injunctive and equitable relief, including appropriate reinstatement/front pay and related relief as permitted by law.

50.      Defendant intentionally violated Klaus's rights under Title VII with malice or reckless indifference, and as a result, Defendant is liable for punitive damages to the extent permitted by law.

## COUNT TWO

### Retaliation in Violation of Title VII of the Civil Rights Act of 1964
### (42 U.S.C. §§ 2000e *et seq.*)

51.      Klaus repeats and realleges paragraphs 1 through 50 as if fully set forth herein.

52.      On multiple occasions—including but not limited to 2019 through 2024— Klaus engaged in protected activity by complaining to Defendant's leadership, including Harmon, about

discriminatory and hostile treatment based on Klaus's sexual orientation. Specifically, Klaus reported anti-LGBTQ remarks and threats by staff, homophobic harassment affecting students and Klaus's programs, discriminatory exclusion and undermining, and unfair treatment he believed was connected to his LGBTQ identity; and Klaus communicated concerns that Defendant's actions were "because of who I am." Defendant responded with inaction, minimization, increased scrutiny, and adverse actions.

53.    Only weeks to months after Klaus's protected activity, Defendant subjected Klaus to materially adverse actions—culminating in effective termination of Klaus's employment—on or about April 17, 2024, purportedly because of tardiness.

54.    Defendant's stated reason is pretextual and baseless. Defendant effectively terminated Klaus because he engaged in protected activity, including complaining of discrimination and opposing discriminatory and hostile practices directed at LGBTQ identity.

55.    Klaus suffered damages because of Defendant's unlawful retaliatory actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action, and Klaus seeks all available legal and equitable relief.

56.    Defendant intentionally violated Klaus's rights under Title VII with malice or reckless indifference, and as a result, Defendant is liable for punitive damages to the extent permitted by law.

## <u>COUNT THREE</u>

**Disability Discrimination and Failure to Accommodate in Violation of the Americans with Disabilities Act**

**(42 U.S.C. §§ 12101, 12117)**

57.     Klaus repeats and realleges paragraphs 12 through 56 as if fully set forth herein.

58.     Klaus has a disability within the meaning of the Americans with Disabilities Act ("**ADA**"). Specifically, Klaus has Bipolar II disorder and, at relevant times, experienced related symptoms and medication side effects affecting major life activities, including sleep.

59.     Klaus was a qualified individual with a disability. With or without reasonable accommodation, Klaus could perform the essential functions of his position and, throughout his employment, successfully performed his duties.

60.     In or about Fall 2023, Klaus informed Harmon that Klaus had been diagnosed with Bipolar II disorder. On or about January 17, 2024, Klaus informed Harmon that Klaus had Bipolar II disorder and that he was adjusting to new medication that was disrupting his sleep and contributing to tardiness.

61.     Klaus's disclosure placed Defendant on notice that Klaus may need a reasonable accommodation related to the medication-related sleep disruption and its effects on arrival time and morning functioning.

62.     After Klaus's disclosure, Defendant failed to engage in the ADA-required interactive process and failed to explore or provide reasonable accommodations, including any

accommodation that could have addressed the medication-related sleep disruption and/or arrival-time issues.

63.    On or about April 17, 2024, Defendant informed Klaus that his contract would not be renewed, purportedly due to tardiness.

64.    Defendant's reliance on "tardiness" as the stated basis for non-renewal was discriminatory because, among other things, it was closely temporally connected to Klaus's January 17, 2024 disability disclosure and was tied to the same symptoms and medication effects Klaus reported.

65.    Defendant's stated reason is also pretextual and unsupported because, among other things, Klaus received no written warnings, no progressive discipline, and Defendant refused to provide documentation supporting the decision despite claiming it existed.

66.    Defendant discriminated against Klaus on the basis of disability by failing to accommodate him, failing to engage in the interactive process, and effectively terminating his employment under circumstances giving rise to an inference of disability discrimination.

67.    Klaus suffered damages as a result of Defendant's violations of the ADA, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action, and Klaus seeks all available legal and equitable relief, including back pay, front pay or reinstatement, compensatory damages, attorneys' fees and costs, and any other relief permitted by law.

## COUNT FOUR

**Retaliation in Violation of the Americans with Disabilities Act**

**(42 U.S.C. § 12203)**

68.     Klaus repeats and realleges paragraphs 1 through 67 as if fully set forth herein.

69.     Klaus engaged in protected activity under the ADA when he disclosed his Bipolar II diagnosis to Harmon in or about Fall 2023 and later disclosed his disability and the medication-related sleep disruption on January 17, 2024, and sought assistance and/or accommodation for the resulting workplace impact.

70.     Defendant thereafter subjected Klaus to materially adverse actions, culminating in the non-renewal/termination decision communicated on or about April 17, 2024.

71.     The close temporal proximity between Klaus's protected activity and Defendant's adverse actions supports an inference that Defendant retaliated against Klaus because of his disability disclosure and request for assistance/accommodation.

72.     Defendant's stated reason for non-renewal ("tardiness") is pretextual and baseless for the reasons alleged above, and Defendant's actions were motivated, at least in part, by retaliatory animus in response to Klaus's protected activity under the ADA.

73.     Klaus suffered damages because of Defendant's unlawful retaliatory actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action, and Klaus seeks all available legal and equitable relief, including compensatory damages, attorneys' fees and costs, and any other relief permitted by law.

## COUNT FIVE

**Sexual Orientation Discrimination, Hostile Work Environment, Retaliation, and Disability Discrimination/Failure to Accommodate in Violation of the Illinois Human Rights Act**

**(775 ILCS 5/1-101 *et seq*.)**

74.    Klaus repeats and realleges paragraphs 1 through 73 as if fully set forth herein.

75.    The Illinois Human Rights Act (the "**IHRA**") prohibits an employer from discriminating against an employee because of sexual orientation and disability, from subjecting an employee to a hostile work environment on those bases, from retaliating against an employee for opposing unlawful discrimination or participating in protected activity, and from failing to provide reasonable accommodations for a known disability.

76.    At all relevant times, Defendant was an "employer" within the meaning of the IHRA and was subject to the IHRA's prohibitions against discrimination, harassment/hostile work environment, retaliation, and disability discrimination.

77.    Klaus was subjected to adverse employment actions, harassment, and disparate treatment because of his sexual orientation, including but not limited to: (a) discriminatory questioning and stigmatizing treatment during hiring; (b) the inclusion of and reliance on contract clause "lifestyle" restrictions tied to Roman Catholic doctrine; (c) being outed and subjected to anti-gay slurs without meaningful corrective action; (d) administration tolerating anti-LGBTQ comments by staff, including repeated anti-gay and anti-trans remarks and a violent threat toward a transgender musician; (e) failure to respond meaningfully to student conduct and vandalism perceived as anti-gay targeting; (f) being marginalized and excluded from communications and

recognition connected to programs he directed; and (g) the decision not to renew his employment contract.

78.     The harassment and marginalization described above were unwelcome, were because of Klaus's sexual orientation, and were sufficiently severe or pervasive to alter the terms and conditions of Klaus's employment and to create a hostile work environment, and Defendant knew or should have known of the harassment and failed to take reasonable corrective measures.

79.     Klaus also was subjected to adverse employment actions and disparate treatment because of his disability (Bipolar II disorder and associated symptoms/medication effects), including the non-renewal decision shortly after his disclosure of the condition and its workplace impact.

80.     Klaus disclosed his Bipolar II diagnosis to Harmon in or about Fall 2023 and the medication-related sleep disruption to Harmon on or about January 17, 2024, and Defendant thereafter failed to engage in the interactive process and failed to provide reasonable accommodation as required by the IHRA.

81.     Klaus engaged in protected activity under the IHRA by opposing and reporting discriminatory and harassing conduct and by raising concerns about unequal treatment, harassment, and retaliation; Defendant thereafter retaliated against Klaus, including by escalating adverse actions and culminating in the non-renewal of Klaus's employment on or about April 17, 2024.

82.     Defendant's stated justification for non-renewal ("tardiness") was pretextual and not the true reason for its actions, as reflected by, among other things, the lack of progressive

discipline, the refusal to provide supporting documentation, the temporal proximity to Klaus's protected activity and disability disclosure, and Defendant's inconsistent treatment of similarly situated employees.

83.     As a direct and proximate result of Defendant's unlawful conduct in violation of the IHRA, Klaus suffered damages, including emotional distress, humiliation, loss of income and benefits, and other compensable losses, and Klaus is entitled to all relief available under the IHRA, including compensatory damages, back pay, front pay and/or reinstatement, attorneys' fees and costs, and any other legal and equitable relief the Court deems just and proper.

[SIGNATURE PAGE FOLLOWS]

**PRAYER FOR RELIEF**

**WHEREFORE**, Klaus respectfully requests judgment as follows:

A. Award Klaus for his past and future loss of wages and benefits, plus interest;

B. Order Defendant to reinstate Klaus to a position comparable to his former position or, in lieu of reinstatement, award him front pay (including benefits);

C. Award to Klaus all costs and reasonable attorneys' fees incurred in connection with this action;

D. Award to Klaus compensatory damages;

E. Award to Klaus punitive damages; and

F. Grant Klaus such additional or alternative relief as the Court deems just and proper.

## JURY DEMAND

Klaus demands a trial by jury on all claims properly triable by a jury.

Dated: January 7, 2026

Respectfully submitted,

THOMPSON COBURN LLP

/s/ Nabil Al-Khaled

Nabil Al-Khaled

IL Bar No. 6343080
One US Bank Plaza
St. Louis, MO 63101
Tel: (314) 552-6274
Fax: (314) 552-7000
E-mail: nalkhaled@thompsoncoburn.com


/s/ Mark D. Schoon

Mark D. Schoon

IL Bar No. 6276962
7710 Carondelet Avenue
Suite 105
St. Louis, MO 63105
Tel: (314) 808-2375
E-mail: mark.schoon@gmail.com


Attorneys for Plaintiff, Brett Klaus